Kilty, Chancellor.
On the petition of Sarah II. Smith, the auditor is directed tó state an account of the claims against the estate of Charles Wallace if the proceedings are in a state for that purpose.
Immediately after which the case was again brought before the court for further consideration on the same petition.
29th July, 1820. — Kilty, Chancellor. — On the petition of Sarah II. Smith, claiming to be a creditor, and praying to be paid out of the proceeds of the said estate, on the ground, that the personal estate is insufficient, and that notice should be given to the heirs and devisees, and to the creditors; I have examined the proceedings, and find some difficulty in making the order at present. It has become the established practice to admit and determine on claims to the proceeds of sale on decrees for the purpose of dividing them; but this being done to remedy the neglect or delay of creditors who might have filed their original bill, it is incumbent on them to shew who are at present the heirs and devisees, their residence and ages, and to have order for publication against those out of the State.
On the 31st December 1821,' some of the devisees filed their petition, in which they stated, that the trustee, Brewer, had made sale of the real estate, and had the money then in his hands; and stated further, that there are several disputes both at law and in equity, which have prevented a settlement of the personal estate of the said Charles Wallace, and it may remain for a long time doubtful whether the creditors or the representatives will be entitled to the proceeds of the said sales. In the mean time the debts are increased yearly by accruing interest, and .the funds lie idle in the hands of the trustee. Part of the money arising from said sales *53 have now been upwards of three years in the trustee’s hands. Upon which they prayed, that a trustee might be appointed to receive the money from Midiólas Brewer, and who might be directed to invest it insome public stocks, and'the dividends thereof also to be invested.
31st December, 1821. — Johnson, Chancellor. — On the aforegoing petition, it is ordered, that the trustee, Nicholas Brewer, invest the money that he has, or shall receive in consequence of the sales made by him, in the. stock of the Farmers Bank of Maryland, or in the stock of the Government of the United States, as he shall find most to the interest of those, interested, and the dividends arising from such investment, in like manner to be invested. An annual report of the trustee is directed to be made to the court stating the amount invested, and the dividends arising therefrom, as well as the appropriations he shall have made of the dividends.
On the first of April, 1824, some of the devisees filed a petition, praying that the trustee might be ordered to account for stock purchased ; or, if none had been purchased, that he might be charged with interest, and that another account might be stated making a distribution without charging him- interest. Upon which it was ordered, that the accounts be stated by the auditor as prayed.
17th March, 1825. — Bland, Chancellor. — Ordered, that Nicholas Brewer, trustee, on or before the second day of April next, bring into court the money in his hands arising from the sales of property sold by him, and the securities which remain uncollected, as also interest from the 1st January 1822, on the amount acknowledged by his report to have been received, or shew cause to the contrary: provided a copy of this order be served on the said trustee on or before the twentieth instant.
The auditor, in his report of the 2d of July, 1825, says, “ In obedience to the court’s order of 24th July, 1820, he has made, of the claims exhibited against the-estate of the said Charles Wallace, deceased, the statements marked A. A. as of the day of the trustee’s last sales, and they amount, as appears for debts, to $8897 12, and for legacies to $2900 21. The claims for debts are not established as the act of ’-98, and the practice of the court require. Nor have such proceedings thereon been taken as to enable the Chancellor regularly to allow them, if they were sufficiently vouched. Yet, one of them (No. 1.) beingajudgment.againstthe deceased in his lifetime, and of course a lien on the estate, he thinks it should, at least, be entertained *54 until the right of the claimant shall, on notice, have been decided. In execution of the court’s order passed upon the petition of Wallace’s devisees, filed 1st April 1824, he has stated the trustee’s account with the estate, marked B., applying the proceeds thereof to the payment of his allowances for commission and expenses, and of the costs in this court, and distributing the balance among the deceased’s residuary devisees, assuming thus, that the personal estate is sufficient for the payment of debts and legacies, nothing being shewn to the contrary. And he has stated too, the trustee’s account C. for so much of the proceeds as he has received; charging him therewith, and at his request, with the amount also^of sales made to his son N Brewer, junr. then crediting his said allowances for commission, See. and the sum he paid into court on the 6th of April last; and so shewing a balance of $673 77 cents in his hands yet to be accounted for. At the foot of that account he has charged the 'trustee with interest also, from 1st January 1822, as directed; and this makes the balance in his hands to be $1393 22, bearing further interest from 6th April 1825.
On the 14th of July 1825, Nicholas Brewer, the trustee, filed his report, on oath, shewing cause in obedience to the order of the 17th of March 1825, in which report he says, “ That by the decree, under which he acted, it became his duty to sell the property decreed to be sold, to take bond with sufficient sureties for the purchase money, to bring the bonds so taken, and the purchase money when received into court, or to apply it under the Chancellor’s direction to those entitled to receive it, and he humbly conceives, that the Chancellor had no power to order him to invest the money when received and the accruing dividends compelling him to undergo labour and encounter risks not contemplated by his original appointment, nor intended to be compensated by his commission, nor does he believe, that the Chancellor had any power to order the investment of the proceeds of the sale of the real estate at all.
“ Notwithstanding, the trustee further states, that in obedience to the said order he did endeavour to procure stock of the Farmers Bank of Maryland, but was not successful; and the stock of the Government of the United States was, at the date of the order, and ever since has been, above par, and would not have secured to the claimants six per cent, interest on their claims, which appeared to be the object of the petitioners. And the trustee, residing in Annapolis, could not have obtained it, even at the then value, without the employment of brokers, or other agents, at the expense of commission to them, and involving risk to himself by their possible infidelity.
*55 “ The trustée further represents, that he has made no interest from the funds in his hands, nor derived .any pecuniary advantage from them, but has always been .ready ;to bring them into court when required by the Chancellor to do,so, and should have brought the whole into court under the Chancellors order of the 17th March last, but that the auditor’s statement, ascertaining the exact amount to be brought in, had not been made, and he is ready to bring in the residue.
“ The trastee further states, that the: only dispute, that he knows of, which rendered it doubtful whether the heirs or devisees of said Wallace or his creditors should receive the said funds, was a suit in this court by Charles W. Hanson executor of Wallace, against John Murray, executor of John Muir, to which the trustee refers, in which the auditor’s report was made on the 4th of July 1821, and was understood to be acquiesced in, and the decree passed on the 23d of February 1824; and which case the trustee was in daily expectation of being decided a considerable time before; and he believes that was the suit which induced the petitioners- to require the investment.
“ The trustee further statés, that not having succeeded in his endeavours to invest the said funds, and the petitioners and their counsel being acquainted with the progress of the said suit of Hanson v. Murray, and often attending the Chancery Court, and not having called upon him to report, he had every reason to believe, that they were satisfied, that the funds should remain as they were. The trustee further states, that even if he were chargeable with interest in this case it would be going a great length to charge him from the moment the order to invest was made, which the auditor, at the instance of the petitioner’s solicitor, has done.”
On the 18th of August 1825, Sarah H. Smith, with James Smith and Edward T. Bond, filed an amended petition, giving a more particular account of the nature of the claim and judgment mentioned in her petition of the 9th of August 1819, and .stating that she had assigned it to the two other petitioners; that the personal estate of the late Charles Wallace was totally insufficient to pay his - debts; and praying that their claim might be paid out of the proceeds of the sale'of his real estate now in this court; and that notice might be given to the heirs, devisees, and legatees. To this petition Charles W. Hanson, one of the devisees, filed his answer, on the 17th of November 1825, in which he says, that he does not know of or admit the said judgment, or the correctness *56 thereof, or that the same is justly chargeable on the funds deposited in this court. And he also pleads, and relies upon, the act of limitations of 1715, ch. 23, s. 7, as a bar to the judgment.
29th August, 1825. — Bland, Chancellor. — The trustee having made a further report on the 14th of July last, shewing cause in obedience to ' the order of the 17th of March last, the parties were heard by their counsel, and the proceedings and proofs in relation thereto were read and considered.
It is conceived there can be no doubt, that this court has the power to make such an order as that, of the 31st December 1821; and, under the then circumstances of this case, its propriety was evident, (a) A person who is appointed a trustee by this court is not bound to accept the trust; or to continue in the office longer than he chooses; but, so long as he does consent to act in that capacity, he is bound implicitly to obey the orders of the court. In this case the trustee might have refused to take upon himself the risk, and trouble of executing the order of the 31st December 1821; but, if he thought proper to refuse, he was bound immediately to apprise the court of his determination, and to bring in those proceeds, then in his hands, which the court had told him should remain no longer idle, but be made productive in the manner pointed out; and, not having done so, he is clearly chargeable with interest.
Whereupon it is Ordered, that Nicholas Brewer, the said trustee, forthwith bring into this court the sum of $1393 22, as stated by the account marked C. as part of the auditor’s report returned on the 6th of July last, together with interest on the said sum of money from the 6th day of April last.
Some time after which, the case was again brought before the court, by a motion of the solicitor of the representatives of the late Charles Wallace, the petition of Sarah H. Smith, and others, filed on the 18th August, 1825, having been dismissed.
30th March, 1826. — Bland, Chancellor. — Ordered, that the auditor’s statement of the 2d July, 1825, be ratified and confirmed; and that the trustee apply the proceeds accordingly, with a due proportion of interest, that has been or may be received, towards the payment of such of the said claims as may remain due and unpaid after the payment of the sum now in bank; for the payment of *57 which to the said claimant’s solicitor, the register is hereby directed to draw a check.
The trustee, Brewer, appealed from the order of the 29th of August, 1825; and under the name of the case of Nicholas Brewer, vs. Charles W. Hanson, and others, on the 2d of July, 1828, the order was affirmed.

 Spring v. The South Caro. In. Comp. 6 Wheat. 519; 1 Harr. Pra. Chan. 256; 2 Fowl. Exch. Pra. 287.